**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RENEE SUZANNE BROOKS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-CV-2671-DAD-ICD<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Renee Suzanne Brooks (Plaintiff) seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner or Defendant) denying her application for disability insurance benefits under Title II of the Social Security Act pursuant to 42 U.S.C. § 405(g). Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 8), Defendant's Cross-Motion for Summary Judgment (ECF No. 12), and Plaintiff's Reply Brief (ECF No. 15). For the reasons set forth below, the undersigned recommends that Plaintiff's motion be denied, Defendant's cross-motion be granted, and the Commissioner's final decision be affirmed.

**I. BACKGROUND**

On June 27, 2022, Plaintiff filed an application for disability insurance benefits alleging disability beginning on November 1, 2021. CAR[1] 17. Plaintiff's claim was denied initially on January 9, 2023, and upon reconsideration on January 4, 2024. CAR 17, 82, 90. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on June 26, 2024, before ALJ Katherine Loo. CAR 17, 35–64. On August 19, 2024, the ALJ issued an unfavorable decision finding Plaintiff not disabled. CAR 14–30. On July 29, 2025, the Appeals

[1] Citations are the to the Certified Administrative Record (CAR) lodged on November 20, 2025, ECF No. 7.

Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. CAR 1–6.

In the August 19, 2024 decision, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2021, noting that Plaintiff's brief employment in the first quarter of 2023 qualified as an unsuccessful work attempt. CAR 20. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spines, and degenerative joint disease of the lumbar spine. CAR 20. The ALJ found Plaintiff's hypertension, hyperlipidemia, anxiety, left wrist fracture, and left thumb tendon rupture to be non-severe impairments. CAR 21–22. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. CAR 23–24.

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that she could frequently climb ramps and stairs, frequently stoop, and occasionally climb ladders, ropes, and scaffolds, kneel, crouch, and crawl. CAR 24. At step four, the ALJ found that Plaintiff could perform her past relevant work as a janitor, though she could not perform her composite past relevant work as a traffic control signaler/flagger and highway maintenance worker. CAR 27–28. In the alternative, at step five, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including hand packager, cleaner II, and order filler. CAR 28–29.

## II. LEGAL STANDARD

The Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence in the record as a whole and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance, and means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). However, the Court "may not affirm simply by isolating a specific quantum of supporting evidence," *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989), and may review only the reasons provided by the ALJ in the disability determination, Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If substantial evidence supports the administrative findings, or if conflicting evidence supports a particular finding, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. DISCUSSION

Plaintiff raises three challenges to the ALJ's decision: (1) the ALJ erred at step two by finding her left upper extremity injury non-severe and failing to fully develop the record; (2) the ALJ erred in evaluating the medical opinions of consultative examiner Sheena Pillai, M.D., and treating physician Jennifer Franchuk, M.D.; and (3) the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. ECF No. 8 at 6. For the reasons discussed below, the undersigned finds that the ALJ's decision is free of prejudicial legal error and supported by substantial evidence.

### A. Step Two and Duty to Develop the Record

At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe" enough to significantly limit the physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see also* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523. The step-two inquiry is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273,

1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment, or combination of impairments, may be found not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (citing Social Security Ruling ("SSR") 85-28); *see also Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). The claimant bears the burden of establishing the severity of an impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; a claimant's own statement of symptoms alone is insufficient. 20 C.F.R. § 404.1521.

In February 2024, Plaintiff fell and injured her left wrist and thumb. CAR 502. Clinical examinations by Dr. Franchuk in April and May 2024 documented that Plaintiff had no voluntary control over her left thumb, no active extensor pollicis longus function, and an unpalpable tendon. CAR 502, 507. X-rays revealed a prior nondisplaced Colles' fracture, and Dr. Franchuk diagnosed a rupture of the extensor pollicis longus tendon of the left hand, noting that surgical repair would require transferring a tendon from the index finger to the thumb. CAR 502–03. At the June 26, 2024 hearing, Plaintiff testified that her left thumb was detached and "not usable," explaining that while it did not hurt, she could not extend it or use it to grasp heavier items or tie her hair, though she could still eat, cut food, and pick up light objects with her left hand. CAR 21, 51–52.

At step two, the ALJ admitted the post-hearing records (Ex. 14F) and found Plaintiff's left wrist fracture and thumb tendon rupture non-severe, explaining as follows:

> With respect to the claimant's wrist fracture and thumb tendon rupture, the claimant testified at the hearing that she had fallen and broken her wrist, but medical records available at the time did not cover the injury (hearing testimony). The claimant then submitted updated records following the hearing which detailed the claimant injuring her left wrist in a fall in February 2024 (Ex. 14F at 2). X-ray imagining [sic] results were not included, but office visit notes from May 2024 noted the claimant's left wrist showed evidence of a previous fracture and a tendon rupture as a result of the non-displaced fracture (Ex. 14F at 2-3). The claimant alleged difficulty with her left thumb since that time, but a surgical remedy was declined and there was no urgent need to pursue it (Ex. 14F at 3). The claimant stated that she could still perform tasks like cutting food and eating, and she could pick up light things with her left hand, but had difficulty tying her hair back (hearing testimony). Therefore, the claimant's wrist fracture and thumb tendon rupture cannot be considered to have more than a minimal effect on the claimant's ability to perform basic work activities and therefore cannot be considered severe per SSR 85-28.

CAR 21.

Plaintiff argues that the ALJ erred in finding her left upper extremity injury non-severe despite her loss of voluntary left thumb control, and contends that the ALJ failed to develop the record by not ordering a consultative examination or recontacting her treating provider. ECF No. 8 at 6–10; ECF No. 15 at 1–2. Defendant contends that the record was fully developed, that the ALJ reasonably evaluated the medical records and Plaintiff's hearing testimony, and that any step-two error was harmless because step two was resolved in Plaintiff's favor. ECF No. 12 at 1–3.

The undersigned concludes that the ALJ did not err at step two. As the ALJ noted, Plaintiff's treatment records reflected that she declined surgical intervention and that her provider noted no urgent need to pursue surgery. CAR 21, 503. Moreover, Plaintiff testified that her left thumb was painless, described it as "not an important issue," and confirmed that she remained able to perform daily functional tasks with her left hand, including eating, cutting food, and picking up light objects, experiencing difficulty primarily with tasks such as tying her hair back. CAR 21, 51–52. Given the conservative treatment course, lack of pain, and Plaintiff's own testimony regarding her preserved functional use of her left hand, substantial evidence supports the ALJ's determination that the injury had no more than a minimal effect on her ability to perform basic work activities.

Furthermore, the ALJ did not fail to discharge her duty to develop the record. An ALJ's duty to develop the record further is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). Even where that duty is triggered, an ALJ may discharge it by leaving the record open after the hearing to allow the claimant to submit additional medical records. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). Here, Plaintiff had previously failed to attend a scheduled consultative examination in December 2023, CAR 84–87 and repeatedly indicated prior to the hearing that she had no additional medical records to submit, CAR 237, 276, 284–85. At the June 26, 2024 hearing, the ALJ held the record open so Plaintiff could submit her post-February 2024 treatment

notes, and the ALJ admitted and evaluated those records (Ex. 14F) in her decision. CAR 17, 21. Because those treatment records, alongside Plaintiff's detailed hearing testimony regarding her left-hand capabilities, were neither ambiguous nor inadequate to evaluate her functional limitations, no additional consultative examination was required.

**B. Evaluation of Medical Opinions**

For claims filed on or after March 27, 2017, the Commissioner evaluates the persuasiveness of medical opinions under 20 C.F.R. § 404.1520c rather than assigning controlling weight based on a treating relationship. *Woods v. Kijakazi*, 32 F.4th 785, 789–92 (9th Cir. 2022). Under the revised regulations, the ALJ must consider five factors: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)–(5). The two most important factors are "supportability" and "consistency," and the ALJ must articulate how she considered both factors for each medical opinion. 20 C.F.R. § 404.1520c(b)(2). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). Although the revised regulations displaced prior precedent requiring "specific and legitimate" reasons to reject an examining or treating physician's opinion, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

**<u>1. Sheena Pillai, M.D.</u>**

Consultative examiner Sheena Pillai, M.D., examined Plaintiff on December 15, 2022, observing that Plaintiff was in no acute physical distress, could rise unaided from a seated position, and got on and off the examination table without discomfort. CAR 26, 395. Dr. Pillai noted limited lateral range of motion and rotation of the cervical spine with discomfort, limited range of motion with discomfort in the hip and dorsolumbar spine, reduced strength in bilateral hip flexion, and full strength in both upper extremities, including grip. CAR 26, 396. Dr. Pillai

opined that Plaintiff had no limitations in sitting, standing, or walking, could occasionally bend, stoop, squat, crouch, and crawl, and should be limited to lifting and carrying a maximum of 15 to 30 pounds. CAR 26, 397. The ALJ found Dr. Pillai's opinion partially persuasive, rejecting the 30-pound lifting restriction as follows:

> The undersigned finds the opinion provided by Dr. Pillai to be partially persuasive. Dr. Pillai's opinion was supported by the underlying physical exam and was consistent with the overall medical record which showed the claimant to have decreased motion in the neck and back, but a generally normal gait (Ex. 2F at 25; Ex. 9F at 8; Ex. 10F at 24; Ex. 13F at 20). The undersigned does not adopt Dr. Pillai's limiting the claimant to 30 pounds of lifting and carrying as her physical exam shows the claimant to have full strength in her upper extremities and only some reduced strength in hip flexion.

CAR 26.

Plaintiff contends that the ALJ's rejection of Dr. Pillai's lifting restriction was not supported by substantial evidence, noting Plaintiff's slight build (110 pounds) and arguing that lifting implicates the spine and hips rather than upper extremity strength alone. ECF No. 8 at 11–12; ECF No. 15 at 2–3. The undersigned disagrees. The ALJ properly addressed both supportability and consistency, explaining that Dr. Pillai's own physical examination demonstrated full strength in both upper extremities (5/5, including grip) and only slight reduction in hip flexion strength, alongside a generally normal gait across longitudinal examinations. CAR 26, 396. While Dr. Pillai attributed the 30-pound restriction to cervical and lumbar spine impairments, the ALJ reasonably concluded that Plaintiff's intact upper extremity strength, ability to rise and mount the examination table without distress, and generally normal gait—together with the prior administrative medical findings of state agency consultant Z. Mavli, M.D., which the ALJ found fully persuasive (CAR 27, 76–78)—supported the capacity for medium lifting (up to 50 pounds occasionally and 25 pounds frequently). Where the clinical findings are susceptible to more than one rational interpretation, the ALJ's resolution must be upheld. *Thomas*, 278 F.3d at 954.

**<u>2. Jennifer Franchuk, M.D.</u>**

On September 15, 2022, treating physician Jennifer Franchuk, M.D., completed a medical source statement opining that Plaintiff could never climb, stoop, kneel, crouch, or crawl, could

occasionally balance, could never reach to extremes, and was limited to occasional handling and frequent fingering. CAR 25–26, 336–40. The ALJ found Dr. Franchuk's opinion unpersuasive, stating:

> A medical source statement was provided by Jennifer Franchuk, M.D., the claimant's treating physician, on September 15, 2022 (Ex. 4F). Dr. Franchuk indicated that the claimant responded to treatment, but has not returned to full function (Ex. 4F at 3). Dr. Franchuk also indicated that she did not evaluate the claimant's ability to lift and carry, the claimant's range of motion in joints, or the claimant's strength in extremities (Ex. 4F at 2, 5). Dr. Franchuk opined the claimant could never climb, stoop, kneel, crouch, or crawl, but could occasionally balance (Ex. 4F at 6). She also opined the claimant could never reach "to extremes", could occasionally handle and frequently finger with both upper extremities, and the claimant should not work with chemicals (Ex. 4F at 6).
>
> The undersigned finds Dr. Franchuk's opinion to be unpersuasive. Dr. Franchuk did not refer to any objective medical evidence to support her opinions of the claimant's limitations. Moreover, Dr. Franchuk's opinion is inconsistent with the overall record, which shows that the claimant has no discernable [sic] discomfort with normal range of motion in her shoulder, elbow, wrist, fingers, and thumb (Ex. 9F at 8).

CAR 25–26.

Plaintiff argues that the ALJ improperly discounted Dr. Franchuk's opinion without accounting for her longitudinal treatment notes documenting a slow, stiff gait, radiating pain, and worsening degenerative disc disease on spinal imaging, or reconciling Plaintiff's subsequent February 2024 thumb injury. ECF No. 8 at 12–14; ECF No. 15 at 3. The undersigned finds that the ALJ provided substantial evidence supporting her evaluation under 20 C.F.R. § 404.1520c. First, on the supportability factor, the ALJ properly noted that Dr. Franchuk's September 2022 check-box form expressly stated that she had not evaluated Plaintiff's joint range of motion, extremity strength, or lifting and carrying capacity, and cited no objective examination findings explaining why Plaintiff was restricted to occasional handling, frequent fingering, or no extreme reaching. CAR 25–26, 337, 340. Under 20 C.F.R. § 404.1520c(c)(1), an ALJ may discount a medical opinion that lacks supporting explanations and objective examination measurements. Second, on the consistency factor, Dr. Franchuk's severe upper extremity restrictions (limiting handling, fingering, and reaching in September 2022) were directly contradicted by Dr. Pillai's December 2022 consultative examination, which documented normal range of motion without discomfort and 5/5 strength throughout Plaintiff's shoulders, elbows, wrists, fingers, and thumbs.

CAR 26, 396. Accordingly, the ALJ's persuasiveness finding is supported by substantial evidence.

**C. Subjective Symptom Testimony**

Where a claimant establishes objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014); *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022). Although the clear-and-convincing standard does not require the Court itself to be convinced, it "requires an ALJ to show [her] work" with a rationale "clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. In weighing a claimant's statements and testimony, the ALJ may consider objective medical evidence, the nature and severity of the symptoms, treatment history, daily activities, and inconsistencies between the claimant's allegations and the clinical record. *See Bunnell v. Sullivan*, 947 F.2d 341, 345–47 (9th Cir. 1991) (en banc); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1529(c)(3).

At step four, the ALJ summarized Plaintiff's testimony that she cannot work due to restricted movement in her neck and back, cannot carry much with her left hand, can walk for only 15 to 20 minutes before needing to rest, and must get up and change positions every 15 minutes. CAR 24. After reviewing Plaintiff's spinal imaging from 2021 through 2023—which showed minimal lumbar levoscoliosis, mild-to-moderate lumbar degenerative changes with maintained vertebral heights and alignment, and multilevel cervical degenerative changes—the ALJ evaluated Plaintiff's symptom testimony as follows:

> On physical exam, the claimant had a slow and mildly antalgic gait at times, but was also considered normal at others (Ex. 2F at 11, 16, 25; Ex. 10F at 11; Ex. 13F at 27). The claimant has also been noted to have some decreased range of motion at times in the neck and back (Ex. 9F at 8; Ex. 10F at 24; Ex. 13F at 20).
>
> As such, the undersigned has accommodated for the claimant's degenerative disc disease of the cervical and lumbar spines, and degenerative joint disease of the lumbar spine by limiting the claimant to medium exertion levels; frequently climbing ramps and stairs;

> frequently stooping; occasionally climbing ladders, ropes, and scaffolds; and occasionally kneeling, crouching, and crawling.
>
> Therefore, the undersigned has accommodated for the claimant's signs and symptoms that contribute to a loss of work-related functionality with the limitations listed in the RFC. More extensive restrictions are not warranted in this case as the claimant's gait was generally viewed as normal and the claimant has no discernable [sic] discomfort with normal range of motion in her shoulder, elbow, wrist, fingers, and thumb (Ex. 9F at 8).

CAR 25.

Plaintiff argues that the ALJ improperly discounted her symptom testimony by characterizing her gait as generally normal, relying on normal upper extremity findings, and failing to credit her pain complaints, treatment history, and daily activities. ECF No. 8 at 14–17. The undersigned finds that the ALJ provided clear and convincing reasons supported by substantial evidence. Contrary to Plaintiff's assertion, the ALJ did not ignore clinical observations of a slow or mildly antalgic gait or reduced spinal range of motion; rather, the ALJ expressly acknowledged those mixed examination findings and credited Plaintiff's complaints to the extent supported by the record by restricting her to medium exertion with frequent climbing of ramps and stairs and stooping, and only occasional climbing of ladders, ropes, and scaffolds, kneeling, crouching, and crawling. CAR 25. In declining to adopt more extreme limitations, the ALJ reasonably pointed to repeated clinical findings of normal gait, intact motor strength, maintained vertebral alignment, and full, pain-free upper extremity motion, as well as Plaintiff's reported daily activities—including managing her own personal grooming, doing laundry, performing household chores, cutting food, and picking up light objects—which were inconsistent with her allegations of disabling functional limitations. CAR 21–22, 25; *see Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *Thomas*, 278 F.3d at 958–59. While Plaintiff advocates for a more favorable interpretation of the longitudinal record, the ALJ's interpretation is rational and entitled to deference. *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021).

## IV. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the undersigned RECOMMENDS that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED;

2. Defendant's Cross-Motion for Summary Judgment (ECF No. 12) be GRANTED;

3. The Commissioner's final decision be AFFIRMED; and

4. The Clerk of the Court be directed to enter judgment in favor of Defendant and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 16, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE